IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **GEORGE CONNELLY,** | * |
| **Plaintiff,** | * |
| **v.** | * |
| | **CIVIL NO. JKB-21-1068** |
| **STATE OF MARYLAND DEPARTMENT OF HUMAN SERVICES,** | * |
| **Defendant.** | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

On May 1, 2021, Plaintiff George Connelly filed a Complaint against the City of Baltimore, Department of Social Services alleging that he was discriminated against based on his sexual orientation and HIV status during the time he was employed by that agency. (*See* Compl., ECF No. 1.) On May 31, 2021, Plaintiff amended his Complaint to clarify that the proper defendant in this action is the State of Maryland Department of Human Services ("Defendant"). (*See* ECF No. 3.) Plaintiff's Complaint otherwise remained identical. After Defendant moved to dismiss (ECF No. 9), Plaintiff filed a Motion to Amend/Correct seeking leave to file a Second Amended Complaint ("SAC"). (Mot. Amend, ECF No. 11.) Defendant has opposed amendment. (ECF No. 13.) Currently pending before the Court are Plaintiff's Motion to Amend/Correct (ECF No. 11) and Defendant's Motion to Dismiss the First Amended Complaint (ECF No. 9). Both motions are ripe for disposition and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Plaintiff's Motion to Amend/Correct will be granted and Defendant's Motion to Dismiss will be granted in part and denied in part.

1

## *I.   Background[1]*

All three iterations of Plaintiff's Complaint allege the same facts. Plaintiff, a gay, HIV-positive male began working as a contract employee for the Charles County Government Department of Social Services in 2015. (SAC ¶¶ 10, 11, 17, ECF No. 11-3.) In 2017, he became a full-time employee and in 2019, he applied for a promotion that required a transfer to the Baltimore City Department of Social Services. (*Id.* ¶ 19.) That department hired Plaintiff on May 8, 2019. (*Id.* ¶ 20.) Upon receiving his first paycheck, however, Plaintiff realized that he had not been hired at the grade or salary that he had been promised. (*Id.* ¶ 22.) Plaintiff filed a complaint regarding this discrepancy with the human resources department and, after that complaint went unaddressed, filed a union grievance. (*Id.* ¶¶ 23–24.) This grievance resulted in a settlement conference where Plaintiff was informed that "if he was unhappy, he could transfer back to Charles County, or apply to another position." (*Id.* ¶ 25.)

Plaintiff further alleges that, following the settlement conference, Defendant retaliated against him in various ways. First, Plaintiff alleges that "[t]he day after the settlement conference, [he] was transferred to a new supervisor, and had his desk moved." (*Id.* ¶ 26.) This new supervisor, "Carlene Talley, was known around the workplace for being a supervisor that employees were transferred to specifically to make them quit." (*Id.* ¶ 27.) Talley "began to heavily scrutinize and change [Plaintiff's] timesheets" and disciplined him for various minor infractions. (*Id.* ¶¶ 28–31.)

Second, Plaintiff alleges that, following the settlement conference, Defendant disclosed his sexual orientation and his HIV-positive status without consent. (*Id.* ¶ 32.) These disclosures lead to workplace conversations and inappropriate personal questions directed at Plaintiff which led

---

[1] Because Defendant asserts that Plaintiff's second amendment should be denied as futile for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the facts in this section are taken from the proposed SAC and construed in the light most favorable to Plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

2

him to feel "extremely harassed." (*Id.* ¶ 33–35.) This harassment led Plaintiff to seek alternative employment. (*Id.* ¶ 36.) While this search was initially successful, generating several interviews and at least one job offer, those opportunities ultimately fell through when hiring managers checked Plaintiff's references. (*Id.* ¶¶ 37–38.) Plaintiff alleges that Talley provided the negative references that denied him these alternative opportunities. (*Id.* ¶ 40.)

Third, Plaintiff alleges that Defendant ceased to provide him with reasonable medical accommodation for his HIV. (*Id.* ¶¶ 41–45.) Prior to the settlement conference, Plaintiff had received "accommodations includ[ing] time off for doctor appointments and time off, or ability to make up time, when his disability flared-up in a way that prevent[ed] him from working." (*Id.* ¶ 42.) Following the conference, however, Plaintiff began to be "flagged for unexcused absences on days when he had doctor appointments." (*Id.* ¶ 45.) Plaintiff alleges that, collectively, these "changes to his workplace resulted in [him] receiving credit for less than half the time he worked, which not only effected [sic] his pay, but his benefits and retirement as well." (*Id.* ¶ 31.)

Last, Plaintiff alleges that Defendant's retaliation culminated in Plaintiff's wrongful termination. (*Id.* ¶¶ 46–52.) Specifically, Plaintiff alleges that Chase Brexton Hospital received a third-party request to access his medical records. (*Id.* ¶ 46.) This request, which Plaintiff presumes came from Defendant, was denied because it failed to provide the required information. (*Id.* ¶¶ 46–48.) Plaintiff was terminated shortly after this request was denied, allegedly for "submitting false medical records from Chase Brexton Hospital Care in an effort to fraudulently secure paid time." (*Id.* ¶ 49.) Plaintiff alleges that this reason was pretextual given that Chase Brexton never disclosed Plaintiff's information and that Chase Brexton "has expressly denied ever accusing [Plaintiff] of fraud or false production of documents." (*Id.* ¶¶ 50–52.)

3

## *II. Legal Standard*

Under Federal Rule of Civil Procedure 15, a party may, absent undue delay, amend its pleading once as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). Subsequent amendments require "the opposing party's written consent or the court's leave." *Id.* at 15(a)(2).

> [I]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Everett v. Prison Health Servs.*, 412 F. App'x 604, 606 (4th Cir. 2011).

An amendment to a complaint is futile "when the proposed amendment is clearly insufficient and frivolous on its face." *Miller v. Md. Dep't. of Nat. Res.*, 813 F. App'x 869, 880 (4th Cir. 2020). Insufficiency warranting denial of amendment exists where "the proposed amended complaint fails to satisfy the federal rules," such as where an amendment "does not properly state a claim under Rule 12(b)(6)." *U.S. ex. rel Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 446 U.S. at 662. "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

4

## *III.    Analysis*

While Plaintiff's proposed Second Amended Complaint does not alter the facts alleged, it does restyle the legal bases for several of the claims asserted in the First Amended Complaint and adds an additional claim for Sexual Orientation Discrimination under Title VII, 42 U.S.C. § 2000e *et seq.* (*See* ECF No. 11-2 ¶¶ 54–62 (new claim), 69 (alleging failure to accommodate under Rehabilitation Act rather than ADA and FEPA), 78 (alleging retaliation under Title VII rather than the Wagner Act), 86 (alleging retaliation under the Rehabilitation Act and Title VII rather than the Wagner Act).) Defendant argues that, despite these amendments, Plaintiff's Second Amended Complaint still fails to state any plausible claims. (ECF No. 13 at 9.) Accordingly, it argues that leave to amend should be denied as futile. (*Id.*) For the following reasons, the Court will permit Plaintiff to amend his Complaint as he plausibly asserts claims for sexual orientation discrimination, failure to accommodate, and retaliatory termination.

### *A.    Timeliness*

As an initial matter, Defendant previously argued that all of the claims brought against it are untimely because it was named as a defendant ninety-four days after Plaintiff received a right to sue letter from the EEOC. (*See* ECF No. 9-1 at 5–7);[2] *see also Smith v. Brennan*, Civ. No. PWG-17-3334, 2019 WL 3046108, at *5 (D. Md. July 11, 2019) (collecting cases) ("[A] plaintiff bringing claims under either Title VII or the Rehabilitation Act muse file suit 'within 90 days of receipt of the Commission's final decision.'"). Defendant further argues that Plaintiff's claim of

---

[2] Defendant raises this argument against the First Amended Complaint (ECF No. 3), but not against the SAC (ECF No. 11). Generally, where a "first complaint is considered superseded by [ ] amendment, the court is not required to dismiss the suit when a motion points up the weakness of the earlier pleading." 6 Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. Apr. 2021). However, where "some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance." *Id.* Accordingly, out of an abundance of caution, the Court addresses the question of whether Plaintiff's claims against Defendant are timely despite that not being asserted as a grounds for denying amendment of the Complaint.

5

sexual orientation discrimination is also untimely because it was not asserted in either the original or the First Amended Complaint. In both cases, Plaintiff's allegations against Defendant are timely if they relate back to Plaintiff's original Complaint—which was filed against the Baltimore Department of Social Services. (*See* ECF No. 1.)

### *1. Timeliness of Naming Defendant*

In order for a Complaint naming a new party to relate back under Federal Rule of Civil Procedure 15, a Plaintiff must show that "within the period provided by Rule 4(m) for serving the summons and the complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(i)–(ii). While Defendant argues that Plaintiff's claims in the amended Complaints are untimely, it does not substantively address why those claims do not relate back to the original Complaint. A brief analysis shows that they plainly do.

As to the first element, Defendant does not allege that any prejudice arises from the filing of the Complaint four days after the statutorily imposed deadline. Further, Plaintiff avers in their proposed Second Amended Complaint that he also incorrectly filed his EEOC charges against the Baltimore City Department of Social Services. (SAC ¶ 6(b).) Defendant responded in the EEOC proceedings to clarify that it was the properly charged entity in that action as "[t]he Baltimore City Department of Social Services [ ] is one of 24 local Departments of Social Services under the umbrella of the Maryland Department of Human Services." (*see* SAC ¶ 6(c), (d).) This uncontested assertion suggests that Defendant had notice long before the filing deadline, further mitigating any inference of prejudice.

This earlier intervention by Defendant also confirms that it "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii). Although this prior notice of the appropriate Defendant indicates Plaintiff should have known the correct party to name in his original Complaint,[3] the Supreme Court has confirmed that "[i]nformation in the plaintiff's possession is relevant only if it bears on the defendant's understanding of whether the plaintiff made a mistake regarding the proper party's identity." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010). Thus, in addition to providing notice, the mistake as to identity before the EEOC also confirms that Defendant "knew or should have known that the action would have been brought against it" at the time Plaintiff timely filed his first Complaint. Fed. R. Civ. P. 15(c)(1)(C)(ii). Accordingly, the Second Amended Complaint relates back to the original complaint and therefore timely asserts claims against Defendant.

### 2. *Timeliness of Sexual Orientation Discrimination Claim*

In addition to Defendant's general argument that any claims asserted against it are untimely, Defendant also asserts that Plaintiff's claim for sexual orientation discrimination is untimely as it is asserted for the first time in the proposed Second Amended Complaint. (*See* ECF No. 13 at 3.) Accordingly, it argues that leave to amend to assert that claim should be denied because amendment would be futile.[4]

---

[3] Plaintiff explains in the proposed Second Amended Complaint that this error recurred because "[t]he EEOC Right to Sue letter named City of Baltimore, Department of Social Services, as the prospective defendant" despite the intervention of the Maryland Department of Human Services. (SAC ¶ 6(e).)

[4] Although Defendant styles this theory as one of undue prejudice, the thrust of their argument is that the claim fails under Rule 12(b)(6). Failure to timely file suit after receiving a right to sue letter is grounds for dismissing a complaint. *See Clarke v. DynCorpInt'l LLC*, 962 F. Supp. 2d 781, 787 (D. Md. 2013). However, as the Supreme Court recently clarified, such a deficiency is not jurisdictional, *see Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1850 (2019), and is therefore properly addressed at this stage under Rule 12(b)(6).

With respect to the timeliness of this claim, relation back is governed by Rule 15(c)(1)(B). Under that section, a claim set out in amended pleading relates back where it "ar[ises] out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Defendant argues that "Rule 15(c)(1)(b) cannot save [Plaintiff's] sexual orientation discrimination claim where neither the original complaint, nor the first amended complaint asserted such a claim." (ECF No. 13 at 4.) This argument misses the mark because relation back does not turn on whether claims in an amendment were previously asserted, but whether those claims arise out of the same "conduct, transaction, or occurrence" set out in the initial pleading. As the Fourth Circuit has held, where "the substantive allegations in the amended complaint [are] identical to those complained in the initial complaint, the requirements of relation back under Rule 15(c) clearly apply." *Freight Drivers & Helpers Loc. Union No. 557 Pension Fund v. Penske Logistics LLC*, 784 F.3d 210, 218 (4th Cir. 2015). So too here, where Plaintiff's claim for sexual orientation discrimination relies on the exact same facts as his previously asserted claims. Although Plaintiff now asserts those facts under slightly different legal labels, these modifications do not prevent his new claims from relating back. Accordingly, Plaintiff's claim of sexual orientation discrimination is timely and amendment of the Complaint to assert that claim would not be futile.

### B. Substantive Futility

In addition to timeliness, Defendant also argues that most of Plaintiff's claims as reformulated in the Second Amended Complaint fail to state a claim and that therefore amendment to permit those claims would be futile. Notably, Defendant does not address the substance of Plaintiff's sexual orientation discrimination claim—which this Court has found timely. Accordingly, the Court will only consider whether Plaintiff has successfully stated a claim for (1)

8

failure to accommodate; (2) retaliatory hostile work environment; (3) retaliatory termination; and (4) hostile work environment.

### 1. *Failure to Accommodate*

To establish "a prima facie case of failure to accommodate under the Rehabilitation Act, [Plaintiff is] required to show that: "(1) [he] was a qualified person with a disability; (2) the employer had notice of the disability; (3) [he] could perform the essential functions of the position with reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation." *Hannah P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019). "The burden of establishing a prima facie case of discrimination based on disability is 'not onerous.'" *Boone v. Bd. of Governors of Univ. of N.C.*, 395 F. Supp. 3d 657, 669 (M.D.N.C. 2019) (quoting *Ennis v. Nat'l Ass'n of Bus. and Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir. 1995)).

In Count II of the proposed Second Amended Complaint, Plaintiff alleges that, following the settlement conference, Defendant ceased providing Plaintiff with accommodations for his HIV in violation of the Rehabilitation Act. Prior to the settlement conference, Plaintiff had been able to "use flex time either before or after work in order to attend doctor's appointments related to his disability." (SAC ¶ 64.) After the conference, however, Plaintiff began to get "flagged for unexcused absences on days when he had doctor appointments, despite his absences being consistent with his established accommodations." (*Id.* ¶ 66.)

Defendant argues that Plaintiff's allegations do not establish two critical aspects of a failure to accommodate claim. First, it asserts that "Plaintiff fails to allege that [ ] he could perform the essential functions of his job with or without reasonable accommodations." (ECF No. 13 at 5.) And second, Defendant contends that treating Plaintiff's absences as unexcused rather than as flex time did not amount to a refusal to provide Plaintiff with an accommodation. (*Id.*)

9

### a. *Performance of Essential Functions*

To bring a claim for discrimination based on disability, a plaintiff must allege (and ultimately prove) that he or she could perform all of the essential functions of his or her job. "Essential functions of the job are functions that bear more than a marginal relationship to the job." *E.E.O.C. v. Womble Carlyle Sandridge & Rice, LLP*, 616 F. App'x 588, 593 (4th Cir. 2015) (citation omitted). While Plaintiff does not affirmatively assert that he could perform the essential functions of his job (indeed, he does not even identify his position), that he was so qualified can be reasonably inferred from the allegations in the proposed Second Amended Complaint. *See Blackburn v. Trustees of Guilford Tech. Comm. Coll.*, 822 F. Supp. 2d 539, 553 (M.D.N.C. 2011) (explaining that at the motion to dismiss stage a court "cannot determine as a matter of law that [plaintiff's] ability to [perform essential functions] was not plausib[ly stated] where the 'essential functions' of [plaintiff's] job are not before the court and a fact-specific inquiry will be necessary.").

Here, Plaintiff alleges that he had worked for the Department of Social Services for several years and that his "performance at his job was excellent." (SAC ¶ 17–18.) He further alleges that on the basis of his performance, he was promoted from a contract employee to a full employee and that he pursued and obtained what he thought was another promotion in his transfer to Baltimore. (*Id.* ¶¶ 19–20.) Although he alleges that he received negative reviews following the settlement conference, he avers that these negative performance reviews were retaliatory and given "even though [Plaintiff] had generally positive performance." (*Id.* ¶ 40.) This significant history of satisfactory or even exemplary job performance permits the inference that Plaintiff could perform the essential functions of his position. *Cf. Aletum v. Grazzini*, Civ. No. DKC-20-1793, 2021 WL

147030, at *5 (D. Md. Jan. 15, 2021) ("While being invited for an interview might be some indication of qualification, it is not sufficient.").

### b. *Provision of Reasonable Accommodation*

Defendant also argues that Plaintiff's reasonable accommodation claim fails because "he fails to allege facts to suggest that these flagged absences resulted in a repudiation or revocation of a previously granted and successfully implemented accommodation." (ECF No. 13 at 5–6.) "Reasonable accommodations are modification or adjustment to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." *Johansson v. Prince George's Cnty. Pub. Sch.*, Civ. No. DKC-13-2171, 2014 WL 3345054, at *6 (D. Md. July 7, 2014). Such accommodations "may include job restructuring, part-time or modified work schedules, reassignment to a vacant position and other appropriate changes." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 432 (4th Cir. 2015). While "[t]he Rehabilitation Act does not require an employer to provide the exact accommodation that an employee requests[,]" *Hannah P.*, 916 F.3d at 338, the accommodation ultimately provided must be effective. *Johansson*, 2014 WL 3345054, at *6. That is, "it must allow the employee to attain an equal level of achievement, opportunity, and participation that a non-disabled individual in the same position would be able to achieve." *Id.* Plaintiff pleads that the ability to use flex time for doctor's appointments constituted a reasonable accommodation. (SAC ¶¶ 42–44.)

Defendant argues that this accommodation continued even when it began flagging Plaintiff's absences as unexcused because this new practice did not constitute "repudiation or revocation of a previously granted . . . accommodation." (ECF No. 13 at 5–6.) It analogizes this case to *Shealayno'sun v. McCarthy*, Civ. No. APM-18-0746, 2021 WL 39620 (D.D.C. Jan. 5,

11

2021). There, plaintiff received a reasonable accommodation for her stage IV metastatic cancer including full-time telework and a flexible schedule. *Id.* at *1. Plaintiff alleged that these accommodations were revoked by a subsequent letter issued by her supervisor. *Id.* at *10. The court ultimately granted defendant's summary judgment motion on the reasonable accommodation claim because it concluded that "[d]espite the rather curt language in [the supervisor's letter], the record testimony reflect[ed] that Plaintiff ha[d] never stopped teleworking full time and ha[d] always kept a flexible schedule." *Id.*

Here, however, Plaintiff does not allege that Defendant merely reprimanded him for using flex time but rather that Defendant "no longer allowed him to use flex-time for his appointments," essentially nullifying his previous accommodation. (ECF No. 14 at 5.) Further, he pleads that these unexcused absences, among other "changes to his workplace resulted in [Plaintiff] receiving credit for less than half the time he worked." (SAC ¶ 31.) This cut in credited hours "not only effected [sic] [Plaintiff's] pay, but his benefits and retirement as well." (*Id.*) Thus, the inference can reasonably be drawn that the change in how Defendant treated Plaintiff's doctor's visits contributed to Plaintiff not "attain[ing] an equal level of achievement, opportunity, and participation" as his co-workers who did not require an accommodation. *Johansson*, 2014 WL 3345054, at *6. While other changes may also have contributed to that harm, the Court cannot at this juncture say that the change in treatment of Plaintiff's accommodation was independent from the reduction in his credited work hours. Plaintiff therefore adequately pleads a claim for failure to accommodate and amendment of the Complaint to allege this claim under the Rehabilitation Act would not be futile.

## 2. *Retaliatory Hostile Work Environment*

Plaintiff next claims that Defendant retaliated against him for filing a union grievance regarding his expected title and salary in the Baltimore position. (SAC ¶¶ 70–78.) Plaintiff originally plead this claim as a violation of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, *et seq.*, which generally prevents employers from "discharg[ing] or otherwise discriminat[ing] against an employee because he has filed charges . . . under this subchapter." 29 U.S.C. § 158(a)(4); (*see also* First Am. Compl. ¶ 68, ECF No. 3-1.) Defendant moved to dismiss this claim, primarily on the grounds that the "the State is not an 'employer' under the NLRA." (ECF No. 9-1 at 9 (citing 29 U.S.C. § 152(2)).) Plaintiff now reformulates his claim as brought under Title VII. (SAC ¶ 78.) As reformulated, Plaintiff's claim fails.

To assert a claim for retaliation under Title VII, a plaintiff must show "that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011). Here, Plaintiff fails to allege that he engaged in activity protected by Title VII, which "bars employer from discriminating on the basis of 'race, color, religion, sex, or national origin.'" *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018) (quoting Pub. L. No. 88-352, § 703, 78 Stat. 241, 255 (1964) (codified as amended at 42 U.S.C. § 2000e-2(a)). Rather, he asserts that his union grievance was based on his not receiving "the grade or salary that he had been promised" when he was hired to work in Baltimore. (SAC ¶ 22.) He does not allege that this discrepancy was based on any of his protected characteristics, and indeed, alleges that Defendant began discriminating against him with respect to his sexual orientation only after the settlement conference on his union grievance. (*Id.* ¶ 26.) Because Plaintiff fails to allege "retaliation for 'opposition to any practice made an

13

unlawful employment practice by [Title VII]," he fails to state a claim for retaliation under Title VII. *Netter*, 908 F.3d at 937 (quoting 42 U.S.C. § 2000e-3(a)); *see also Booth v. Cnty. Exec.*, 186 F. Supp. 3d 479, 487 (D. Md. 2016) ("The Complaint asserts that [defendant's] retaliation stems from [plaintiff's] union grievance and his 'act of inquiring about policies, raising the issue of lack of annual evaluations and other concerns,' not complaining about race or gender discrimination. Thus, although Booth opposed an employment practice, he does not allege that he opposed an employment practice unlawful under Title VII."). Amendment to reformulate this claim as being raised under Title VII would therefore be futile.

### 3. Retaliatory Termination

To the extent Plaintiff's retaliatory termination claim is predicated on his union grievance, it fails for the same reason as his claim for retaliatory hostile work environment. *See also Campbell v. Mayorkas*, Civ. No. MOC-20-0697, 2021 WL 2210895, at *4 (W.D.N.C. June 1, 2021) ("[A] viable retaliation claim under [the] Rehabilitation Act or ADA must be predicated on conduct protected by [the] Rehabilitation Act or ADA."). However, Count IV also asserts that Plaintiff was terminated because of his accommodation requests—which are protected activity under the Rehabilitation Act. (SAC ¶¶ 79, 84); *see also Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021) (holding that "repeated requests for accommodation" constitute protected activity). Thus, the Court concludes that Plaintiff may state a claim for retaliatory termination insofar as he alleges he was terminated in retaliation for his attempt to obtain and utilize reasonable accommodations for his disability.

Limiting Plaintiff's pleading to this basis also avoids Defendant's only substantive objection to his claim. Defendant argues that Plaintiff has failed to "show that 'there is a causal link' between the protected activity in which he engaged and the adverse employment action of

which he has complained." (ECF No. 13 at 8 (quoting *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 410 (4th Cir. 2013)).)  However, Defendant's argument is predicated on the significant temporal gap between the *settlement conference* and Plaintiff's termination. (*Id.* at 8–9.) It simply does not address the causal connection between Plaintiff's attempts to exercise his right to a reasonable accommodation and his termination, which appears to have continued until Plaintiff's termination. (SAC ¶ 49 (alleging that Plaintiff "was terminated on December 10, 2019 for allegedly submitting false medical records . . . in an effort to fraudulently secure paid time .").) On these pleadings, the Court cannot say that the same objection shows that Plaintiff fails to state a claim predicated on his attempts to secure an accommodation. *See Smith*, 12 F.4th at 417 ("[V]ery little evidence of a causal connection is required to establish a prima facie case of retaliation. . . . A plaintiff may [ ] show [retaliation by establishing] that the adverse act bears sufficient temporal proximity to the protected activity."). Accordingly, Plaintiff successfully states a claim of retaliation insofar as he alleges that Defendant terminated him for attempting to secure a reasonable accommodation for his disability.

### 4. *Hostile Work Environment*

Plaintiff's final claim alleges that Defendant created a hostile work environment. This claim is distinct from Count III in that it asserts that Plaintiff's work environment was actionable even if it was not created in retaliation for protected conduct. "A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (citation omitted). To establish a hostile work environment claim under Title VII, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's sex[;]

(3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli*, 648 F.3d at 220. Defendant argues that Plaintiff fails to state a claim because he has failed to establish that the unwelcome conduct was sufficient "severe or pervasive" to create a hostile work environment. (ECF No. 13 at 7.)

To establish this element, a Plaintiff must allege enough facts to show that "the environment would reasonably be perceived, and is perceived, as hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993). "Whether the environment is objectively hostile or abusive is judged from the perspective of a reasonable person in the plaintiff's position." *Boyer-Liberto*, 786 F.3d at 277 (internal quotation marks and citation omitted). That determination is holistic and "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance. It is not, and by its nature cannot be, a mathematically precise test." *Id.* (internal quotation marks and citation omitted).

As with the remainder of the Complaint, Plaintiff's allegations with respect to his putatively hostile work environment are sparse. He asserts only that he was "subjected to invasive personal questions from coworkers about his medical history and sexuality on the basis of his status as a gay male." (SAC ¶ 88.) While these questions made Plaintiff feel "extremely harassed," (*id.* ¶ 35), the Court cannot conclude that these general allegations plead an objectively hostile work environment. Although hostile work environment claims are fact-specific, "[c]ourts usually only allow hostile work environment claims to proceed where the harassment is near constant, oftentimes of a violent or threatening nature, or has impacted the employee's work performance." *Fordyce v. Prince George's Cnty., Md.*, 43 F. Supp. 3d 537, 552 (D. Md. 2014) (citation omitted).

16

Absent more precise allegations involving particularly offensive conduct, the Court cannot conclude that Plaintiff's allegations "clear the 'high bar' of the objectively severe or pervasive test." *Eckert v. Quality Assocs.*, Civ. No. WDQ-14-1815, 2015 WL 5083329, at *5 (D. Md. Aug. 26, 2015) (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)); *cf. also Churchill v. Prince George's Cnty. Pub. Sch.*, Civ. No. PWG-17-0980, 2017 WL 5970718, at *5 (D. Md. Dec. 1, 2017) (detailing instances of repeated harassment—including the use of severe slurs—that adequately plead hostile work environment claim).

Plaintiff's assertions in support of this claim muddle the pleading standard for a hostile work environment claim and a *retaliatory* hostile work environment claim. As the Supreme Court has explained, "the antiretaliation provision [of Title VII], unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). Thus, where a Plaintiff alleges that a hostile work environment was created in retaliation for protected activity, he must only assert that the change in work environment "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks and citation omitted). As Plaintiff does not allege that he engaged in protected activity under Title VII, he falls outside this more lenient standard for pleading an adverse employment action. *See supra* Part III.2.

Although Plaintiff does allege that the harassment he suffered "substantially altered the terms and conditions of [his] employment[,]" (SAC ¶ 90), this assertion is a "[b]are legal conclusion . . . and [is] insufficient to state a claim." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted). Plaintiff simply does not allege any facts suggesting that "invasive personal questions from coworkers" impacted his work in any meaningful way. (SAC ¶ 88); *see also Membreno v. Atlanta Rest. Partners, LLC*, 517 F. Supp. 3d 425, 442 (D. Md. 2021) (finding

17

that plaintiff's "conditions of employment were materially altered" where plaintiff "lost shifts and days at work [and] was physically assaulted and made to avoid using the restroom for fear of further reprisal" as a result of harassment). In sum, Plaintiff has failed to provide sufficiently detailed allegations for the Court to conclude that he suffered from an objectively hostile work environment. Accordingly, Count V of the Second Amended Complaint fails to state a claim, and amendment to permit this claim would be futile.

### 5. *Motion to Dismiss*

The Court's conclusion that Plaintiff's Second Amended Complaint would state some claims but fail to state others raises an interesting question about the appropriate disposition of the pending motions. The authorities on leave to amend speak of futility in all-or-nothing terms, finding futility where "an amended complaint could not survive a motion to dismiss for failure to state a claim." *Miller*, 813 F. App'x at 880; *see also* 6 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1476 (3d ed. Apr. 2021) (hereinafter "Wright & Miller") ("[S]everal courts have held that if a complaint as amended could not withstand a motion to dismiss . . . then the amendment should be denied as futile."). Here, of course, the Court could permit the Motion to Amend in full and then require Defendant to formally move to dismiss the Second Amended Complaint as a vehicle for dismissing certain claims the Court has already concluded fail to state a claim. However, this unnecessary briefing would be the sort of exaltation of form over substance that is generally disfavored when motions to amend and dismiss intersect. Wright & Miller § 1476 (explaining that in similar circumstances "defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. . . . To hold otherwise would be to exalt form over substance."):

18

Given that both Defendant's Motion to Dismiss and Opposition to amendment are grounded in its view that none of Plaintiff's pleadings state claims under Rule 12(b)(6), the same result can be reached more expeditiously by treating Defendant's Motion to Dismiss "as being addressed to the [Second Amended Complaint]." *Id.* (preferring this procedure where "some of the defects raised in the original motion remain in the new pleading"). Doing so permits the Court to allow amendment, but to also dismiss the parts of Plaintiff's Second Amended Complaint that it has already found fail to state claims as part of its futility analysis. This efficient route prejudices neither party if they disagree with the Court's analysis. Plaintiff is free to seek leave for further amendment; Defendant may move again to dismiss. As such, the Court will grant Plaintiff's Motion to Amend/Correct the First Amended Complaint and will grant in part Defendant's Motion to Dismiss, which will be treated as addressing the Second Amended Complaint.

This disposition leaves the following claims to be litigated in this matter: (1) Plaintiff's claim for sexual orientation discrimination (Count I); (2) Plaintiff's claim for failure to accommodate (Count II); and (3) Plaintiff's claim for retaliatory termination insofar as Plaintiff was terminated in retaliation for exercising his right to reasonable accommodation under the Rehabilitation Act (Count IV).

### *IV. Conclusion*

For the foregoing reasons, an Order shall issue granting Plaintiff's Motion to Amend/Correct (ECF No. 11) and granting in part and denying in part Defendant's Motion to Dismiss the First Amended Complaint (ECF No. 9).

19

DATED this 17 day of December, 2021.

BY THE COURT:

_/s/ James K. Bredar_
James K. Bredar
Chief Judge